IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

John A. Pollock
1234 Lark Street
Lake Orion, MI 48360,

        Plaintiff,

   vs.

Alex Azar, Secretary,
and the U.S. Department of Health and Human Services     CIVIL ACTION NO.  20-2216
The Hubert H. Humphrey Building
200 Independence Avenue, N.W.
Washington, D.C. 20201,                            COMPLAINT IN CIVIL ACTION

and

Andrew M. Saul, Commissioner,
and the U.S. Social Security Administration
1100 West High Rise
6401 Security Boulevard
Baltimore, MD 21235

        Defendants.

_____

**COMPLAINT IN A CIVIL ACTION UNDER THE ADMINISTRATIVE
PROCEDURE ACT SEEKING COMPLIANCE BY DEFENDANTS WITH
A DECISION OFTHE OFFICE OF PERSONNEL MANAGEMENT
AND OTHER RELATED RELIEF**

## INTRODUCTION

      1.       Plaintiff, by his undersigned counsel, files this civil action under the

Administrative Procedure Act, 5 U.S.C. § 551, *et seq*., and 5 U.S.C. § 701, *et seq*., ("APA"), seeking

- 1 -

to enforce a Decision of the Office of Personnel Management ("OPM), rendered in his favor on

April 18, 2018, arising under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., ("FLSA"),

the Back Pay Act, 5 U.S.C. § 5596, ("BPA"), and other federal laws, against the Defendants, on

the ground that they have failed to comply with, and enforce, such OPM Decision, by refusing to

pay to the Plaintiff a monetary award of retroactive wages, interest, attorneys fees and costs as

directed and required by OPM in its Decision.  A copy of OPM's Decision is attached and

incorporated herein as Plaintiff's Attachment A.

2.      This action is part of a continuing effort by Plaintiff to recover for work

he performed on behalf of the United States and Defendants, and their predecessors, as early as

1987, for which he has not yet been properly compensated.

As grounds therefore, Plaintiff alleges as follows:

**JURISDICTION**

3.      The United States District Court for the District of Columbia

("USDCDC" or "this Court"), has jurisdiction over this civil action pursuant to (1) 28 U.S.C. §

1331, in that the matters in controversy arise under the Constitution and laws of the United

States; (2) 28 U.S.C. § 1337, in that the matters in controversy arise under an Act of Congress

regulating commerce; and (3) under 28 U.S.C. § 1361, in which Plaintiff seeks to compel

officers and agencies of the United States, namely Defendants, to perform duties and

obligations owed to the Plaintiff.

4.      This Court has jurisdiction to issue declaratory judgments and other

relief sought herein under 28 U.S.C. §§ 2201 and 2202, in that actual controversies exist

between the Plaintiff and Defendants regarding actions and failures to act by Defendants under

APA and other federal laws and regulations.

- 2 -

**VENUE**

5.      Venue is proper in this District under 28 U.S.C. § 1391, since this is a

civil action in which Defendants have failed to act in their official capacities as required under

applicable law, and pursuant to color of legal authority, and a substantial portion of the acts,

events and/or omissions giving rise to the claims herein occurred in this District, and

Defendants reside and do business in this District.

**THE PARTIES AND DEFINITIONS**

6.      Plaintiff John A. Pollock ("Plaintiff"), is the Claimant with regard to the

OPM Decision referred to in Paragraph 1, which he seeks to enforce against the Defendants in

this civil action. He resides at 1234 Lark Street, Lake Orion, Michigan, 48360;

7.      Defendant Alex Azar is the Secretary of the U.S. Department of Health

and Human Services ("HHS"). Defendant HHS is a cabinet agency of the United States and

was an employer of Plaintiff during periods covered by OPM's Decision;

8.      Defendant Andrew M. Saul is the Commissioner of the U.S. Social

Security Administration ("SSA"). Defendant SSA is an agency of the United States, and was

an employer of Plaintiff during periods covered by OPM's Decision;

9.      Plaintiff is a "person" within the meaning of 5 U.S.C. § 551(2);

10.      Plaintiff is a "party" within the meaning of 5 U.S.C. § 551(3);

11.      The OPM Decision sought to be enforced and required to be complied

with herein by Defendants is an "order" within the meaning of 5 U.S.C. § 551(6);

12.      OPM's Decision involved herein is a "sanction" within the meaning of

5 U.S.C. § 551(10)(B);

13.      Failure of Defendants to comply with OPM's Decision involved herein

constitutes a denial of "relief" within the meaning of 5 U.S.C. § 551(11);

14.     Defendants' failure to comply with OPM's Decision involved herein constitutes "agency action" within the meaning of 5 U.S.C. § 551(13);

15.     The failures of the Defendants to comply with the Decision of OPM involved herein is reviewable as final agency actions under APA;

16.     Plaintiff has suffered financial, economic, and legal wrongs and hardships because of Defendants' failures to act, and has been adversely affected and aggrieved thereby regarding his rights under the APA, FLSA, BPA, and other federal laws, and he seeks judicial enforcement under APA in his favor of OPM's Decision involved herein.

17.     5 C.F.R. § 551.708, "Finality and effect of OPM FLSA claim decision," provides, and requires, the following:

> (a) OPM will send an FLSA claim decision to the claimant or the claimant's representative and the agency. An FLSA claim decision made by OPM is final. There is no further right of administrative appeal. However, at its discretion, OPM may reconsider its FLSA claim decision when material information was not considered or there was a material error of law, regulation, or fact in the original decision. The request must be submitted in writing and received by OPM within 45 calendar days after the date of the decision. At its unreviewable discretion, OPM may waive the time limit.

> (b) A decision by OPM under the Act is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which OPM administers the Act.

> (c)

>> (1) Upon receipt of a decision, the agency employing the claimant during the claim period must take all necessary steps to comply with the decision, including adherence to compliance instructions provided with the decision. All compliance actions must be completed within the time specified in the decision, unless an extension of time is requested by the agency and granted by OPM.

18.     Defendants Azar and Saul are the principal administrative officials of agencies for which OPM administers the FLSA.

19.     Defendants failed to comply with the OPM Decision involved herein as required under applicable law and failed to file a timely appeal therefrom.

20.     Plaintiff's claim under FLSA involved herein was filed initially on March 3, 1995, with the then General Accounting Office (GAO), which then had jurisdiction over such FLSA claims under the Barring Act, 3 U.S.C. § 3702. GAO's authority to settle such claims subsequently was transferred to OPM, and Plaintiff's claim was thereafter transferred by GAO to OPM.

21.     By letters dated May 7 and 24, 1999, to OPM on behalf of 64 FLSA claimants such as Plaintiff, counsel for plaintiffs asserted that since such claimants had served in the United States military during the Gulf War, they were entitled to the benefit of the extended statute of limitations provided in the Barring Act, 31 U.S.C. § 3702(b)(2), which states:

> When the claim of a member of the armed forces accrues during war or within 5 years before war begins, the claim must be received within 5 years after peace is established or within the period provided in paragraph (1) of this subsection, whichever is later.

22.     On June 7, 2000, counsel for those claimants submitted a letter to OPM requesting a meeting to discuss how the FLSA claims of those claimants entitled to the Barring Act's extended statute of limitations "can be expeditiously resolved."

23.     No further actions were taken by OPM regarding these claims until counsel for plaintiffs wrote to OPM on January 12, 2011, on behalf of these so-called "Gulf War claimants."

24.    As a result, in decisions rendered on November 2, 2012, OPM denied the Gulf War claimants' claims on the basis that they were not entitled to the benefit of the Barring Act's extended statute of limitations for Gulf War veterans.

25.    On behalf of six Gulf War claimants affected by OPM's decisions denying that they were entitled to the Barring Act's extended statute of limitations for war veterans, undersigned counsel for these claimants filed suit in this Court challenging OPM's decision, under APA on March 26, 2013.

26.    On December 30, 2014, this Court reversed OPM's decisions and ordered OPM to "adjudicate and process damages in accordance with FLSA and other applicable laws." *Armstrong v. Archuleta*, 77 F. Supp. 3d 9 (DCDC 2014), ("*Armstrong*").

27.    Thereafter, on October 6, 2015, on the basis of this Court's decision in *Armstrong*, OPM directed defendant HHS "to review the claim filed for [Plaintiff herein], formerly employed by your agency, investigate, and send a thorough report of your findings."

28.    OPM thereafter continued to request such report from defendant HHS but received no response.  Apparently, OPM's request was thereafter transferred by defendant HHS to defendant SSA.

29.    Between August 26, 2016, and March 13, 2017, OPM made similar requests to defendant SSA, without any substantive response.

30.    All of the foregoing failures to respond by Defendants HHS and SSA were in violation of 5 C.F.R. § 551.706(b)(4), of OPM's regulations which declares that "the agency must provide any information requested by OPM within 15 work days after the request unless the agency requests additional time . . ."

31.    No such requests for additional time were requested by any of the

- 6 -

Defendants from OPM.

32.     On December 8, 2017, SSA sent a report regarding Plaintiff's employment by it to OPM.

33.     On April 11, 2018, OPM rendered its Decision involved herein upholding Plaintiff's claim.  *See* Plaintiff's Attachment A.

34.     In its Decision, OPM declared as follows:

**DECISION**

> The claimant's work was nonexempt (i.e., covered by the overtime pay provisions of the FLSA), and he is entitled to compensation for all overtime hours worked at the FLSA overtime rate for the period of the claim he was improperly designated as FLSA exempt; i.e., from June 21, 1987, to February 20, 1993, less his active duty military service time. Since his FLSA settlement was for a time period subsequent to February 20, 1993, it is not germane to the overtime pay calculations for the period of the claim covered by this decision. The agency must follow the compliance requirements on page ii of this decision.

> The claimant must submit evidence showing the amount and extent of overtime that was performed as provided for in 5 CFR 551.706(a) as informed by the agency's copies of SF 50s documenting receipt of premium pay which were submitted to OPM and the claimant. The agency will have the opportunity to review this evidence using any sources of information available, including witnesses, before a determination is made as to whether the claimant is entitled to any back pay under the FLSA and any interest as required under 5 CFR part 550, subpart H.3.  Any petition for attorney's fees and expenses must be submitted to the agency out of which this claim arose. Should the claimant be determined to be entitled to back pay which the claimant believes to be incorrectly computed, the claimant may file a new FLSA claim with this office. (Plaintiff's Attachment A, pp. 8-9).

35.     Pursuant to OPM's Decision, counsel for plaintiff submitted to defendant SSA their "estimates of at least how much FLSA back pay [Plaintiff] is entitled to recover . . ."  In addition, they noted that interest was payable under 5 C.F.R. § 550.806.

36.     To date the defendants have taken no action as required by OPM's Decision to resolve and pay Plaintiff's claim.

## PLAINTIFF'S CLAIMS

### COUNT I

37.     Plaintiff incorporates by reference herein the allegations of paragraphs 1 through 36 above;

38.     As a result of the actions and inactions of Defendants and their agents and agencies, Plaintiff has suffered legal, financial and economic injuries, and is adversely affected and aggrieved thereby.

39.     Defendants have failed and refused to comply with OPM's Decision relating to the Plaintiff's claim, and have not paid him back pay, interest, attorneys fees and costs, as required therein, and under the Equal Access to Justice Act.

### COUNT II

40.     Plaintiff incorporates herein the allegations of paragraphs 1 through 39 above.

41.     Defendants have failed in their legal and non-discretionary statutory duties and obligations to comply with OPM's Decision involved herein and pay Plaintiff what he is owed in accordance therewith.

### RELIEF SOUGHT

(1)     Plaintiff seeks a holding, declaration and order that Defendants' failure to abide by OPM's Decision herein, and comply therewith, is unlawful, and in violation of the APA and BPA, and Defendants' statutory duties to the Plaintiff, and that Plaintiff must be paid

what is owed by Defendants forthwith;

(2)     Awarding attorney's fees and costs to the Plaintiff under the Equal

Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), on the ground that the Defendants' positions

herein are not substantially justified;

(3)     Awarding Plaintiff such other relief as this Court deems just and proper.

Respectfully submitted,

**/s/ Jules Bernstein**
Jules Bernstein - D.C. Bar No. 057513
Linda Lipsett - D.C. Bar No. 383671
Bernstein & Lipsett, P.C.
1130 Connecticut Avenue, N.W., Suite 950
Washington, D.C. 20036
(202) 296-1798
chouse@bernsteinlipsett.com

Attorneys for Plaintiffs

Dated:  August 12, 2020



UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, DC 20415

Merit System
Accountability and
Compliance

# U.S. Office of Personnel Management
# Fair Labor Standards Act Decision
# Under section 204(f) of title 29, United States Code

| | |
|---|---|
| **Claimant:** | John A. Pollock |
| **Agency Classification:** | Criminal Investigator GS-1811-7/9/11/12 |
| **Organization:** | U.S. Department of Health and Human Services |
| **Claim:** | Positions should be nonexempt, thus due FLSA overtime pay |
| **OPM Decision:** | Nonexempt; potentially due FLSA overtime pay |
| **OPM Decision Number:** | F-1811-12-27 |

Carlos A. Torrico
Acting Classification Appeals and FLSA Claims
    Program Manager
Agency Compliance and Evaluation
Merit System Accountability and Compliance

4/11/18
Date

Plaintiff's Attachment A

OPM Decision Number F-1811-12-27                                                      ii

As provided in section 551.708 of title 5, Code of Federal Regulations (CFR), this decision is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which the Office of Personnel Management (OPM) administers the Fair Labor Standards Act (FLSA). The agency should identify all similarly situated current and, to the extent possible, former employees, ensure that they are treated in a manner consistent with this decision, and inform them in writing of their right to file an FLSA claim with the agency or OPM. There is no further right of administrative appeal. This decision is subject to discretionary review only under conditions and time limits specified in 5 CFR 551.708 (address provided in section 551.710). The claimant has the right to bring action in the appropriate Federal court if dissatisfied with this decision.

The agency is to review whether the claimant has worked overtime in accordance with instructions in the "Decision" section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office.

**Introduction**

On June 4, 2012, the U.S. Office of Personnel Management (OPM) received a letter dated June 4, 2012, from the Law Offices of Bernstein & Lipsett, P.C. (B & L), the claimant's duly appointed representative, concerning a Fair Labor Standards Act (FLSA) claim they had initially filed on the claimant's behalf with the General Accounting Office (GAO), now the U.S. Government Accountability Office, on March 3, 1995, and subsequently with OPM on or about September 9, 1999, challenging his exemption status under the FLSA when he was employed as a Criminal Investigator, GS-1811, at the GS-7, 9, 11, and 12 levels with the U.S. Department of Health and Human Services (DHHS).[1]  The claimant was a plaintiff in a lawsuit filed in the U.S. Court of Federal Claims at approximately the same time the administrative claim was filed with GAO.  Based on information provided by B & L, the claimant was awarded back pay under a settlement agreement for the pay period ending March 6, 1993, to the pay period ending December 24, 1994, subject to the two-year statute of limitations for FLSA claims under 29 United States Code (U.S.C.) 255(a).

B & L has requested OPM adjudicate the administrative claim filed with OPM and asserts that, because the claimant served in the military during the Gulf War, the statute of limitations applicable to this claim is the five-year statute of limitations under 31 U.S.C. 3702(b)(2) rather than the two-year statute of limitations (three years for willful violations) applicable to FLSA administrative claims under the Portal-to-Portal Act.  *See* 73 Comp. Gen 157 (May 23, 1994); 31 U.S.C. 3702(b); 29 U.S.C. 255(a).  B & L states the claimant was called to active duty with the United States Army Reserve "from approximately March 4, 1991 to May 25, 1991" in connection with Operation Desert Shield/Storm and, citing the provisions of 31 U.S.C. 3702(b)(2), asserts: "[H]e is entitled to retroactive back pay and interest … for the period he was employed prior to the commencement of the Gulf War on August 2, 1990, in addition to the period he was employed by [DHHS] after the commencement of the Gulf War, up to the date he recovered under previous FLSA settlements.  This period includes June 21, 1987 to February 20, 1993, less Mr. Pollock's active duty military service time, for which he does not seek recovery."

In reaching our FLSA claim decision, we have carefully reviewed all information furnished by the claimant's representative and the agency, including information obtained from a telephonic interview with the claimant, who retired from Federal civilian service on August 29, 2010.  We also interviewed by telephone his former supervisor (now retired) who supervised the claimant from 1988 to 1993.

**Background**

We previously accepted and decided six similar claims under section 4(f) of the FLSA, as amended, codified at section 204(f) of title 29, U.S.C., which we denied as time barred. Subsequently, the claimant's representative brought suit under the Administrative Procedure Act (5 U.S.C. 551 *et seq.*, and 701 *et seq.*) in the United States District Court for the District of

---

[1] During the claim period, the Social Security Administration (SSA) organization was under the DHHS.  When SSA broke away from its parent agency and became an independent agency on March 31, 1995, the claimant's position was transferred to SSA.

Columbia, alleging that OPM wrongfully applied a two-year statute of limitations in denying their administrative claims for unpaid FLSA overtime pay. *Armstrong v. Archuleta,* 77 F.Supp.3d 9 (December 30, 2014). In relevant part, the court stated in its opinion:

> All Plaintiffs are deemed to have timely filed their claims as of the date of their filings with the Claims Court. As a result, Plaintiffs . . . can recover for the entire claim period under the five-year statute of limitations—that is, for all claims that accrued within five years before the Gulf War commenced on August 2, 1990—minus monies paid under their DOJ Settlements.

> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

> [T]he case is remanded to OPM to adjudicate and process damages in accordance with FLSA and other applicable laws, and Plaintiffs' respective employing agencies are directed to compensate them in accordance with OPM's determinations.

Consistent with the holding in the *Armstrong* case, we will apply the five-year statute of limitations and corrective methodology (subtracting monies already received under prior settlements or judgments) to the claims of similarly-situated claimants we find to be FLSA nonexempt and potentially due FLSA overtime pay.

**Analysis**

Under the provisions of 5 CFR 551.706, OPM determines the facts necessary to adjudicate a claim. Applying the court's mandate to determine whether the claimant is owed overtime pay under the FLSA, we must first determine whether the work he performed is exempt or nonexempt from the overtime pay provisions of the FLSA. On August 26, 2016, in response to the aforementioned court decision, OPM requested an agency administrative report (AAR) from the SSA regarding this FLSA claim. By letter dated December 8, 2017, the agency advised OPM that:

> SSA-[Office of the Inspector General (OIG)] does not have historical records of DHHS-OIG, the entity that made the FLSA exemption determinations. Therefore, we cannot state which exemption criteria DHHS-OIG applied to the GS-1811 criminal investigator positions to conclude those positions were exempt.

The claimant is requesting compensation, less his active duty military service time, for criminal investigator work performed while he occupied GS-7/9/11/12 positions with the DHHS from June 21, 1987, to February 20, 1993. Given the agency declined to provide an FLSA exemption determination for criminal investigator work performed by the claimant, we must address the exemption status when he occupied the criminal investigator positions. On June 21, 1987, the claimant was appointed to his Criminal Investigator, GS-1811-7, position with the DHHS-OIG, Office of Investigations, Regional Investigations Office (RIO), in Chicago, Illinois. The position had a full performance level (FPL) of GS-12. Although the claimant notes that the supervisory controls diminished when he occupied the higher-graded positions, he states his primary duties and responsibilities, including the types of investigations he conducted, remained essentially the same as he subsequently progressed in

OPM Decision Number F-1811-12-27                                                   3

positions to the FPL of GS-12.  For that reason, our analysis will primarily reflect the criminal
investigator work performed by the claimant at the FPL of the position he occupied during the
claim period.

*Position information*

The mission of the claimant's RIO was to investigate allegations of criminal activities
perpetrated by service providers, program participants, private individuals, and DHHS
employees involving retirement, disability, Medicare, survivors, supplemental security
income, or any of the approximately 100 programs under the SSA umbrella at that time.  The
RIO investigated a variety of situations involving fraud when an individual concealed work
activity while receiving disability benefits, misused benefits, improperly received Social
Security benefits, utilized false identification, etc.  When initially appointed to the DHHS in
June 1987, the claimant was assigned to the Milwaukee Sub-Office and he was thus
responsible for conducting criminal investigations of alleged or suspected violations occurring
in the State of Wisconsin.  When he was later assigned to the Detroit Sub-Office on February
14, 1988, his area of responsibility shifted to the State of Michigan.  Once an investigation
was assigned, the claimant identified relevant issues, decided the course of the investigation,
pursued the facts, and collected information.  He conducted interviews with individuals who
filed the complaint, the individuals alleged to be involved in the matter, eyewitnesses, and
other individuals relevant to or part of the investigation.  In performing investigations, the
claimant's work also involved reviewing financial, employment, healthcare, and other
records; conducting lawful searches and seizures; securing and serving summonses and search
warrants; carrying out surveillance; and arresting alleged violators.  He developed suspect
profiles and gathered evidence to demonstrate to the local U.S. Attorney that the elements of a
crime had been committed.  The claimant was sometimes called upon to testify in a U.S. court
or grand jury.  The claimant worked under the direction of the Assistant Regional Inspector
General.

*Evaluation of FLSA Coverage*

Sections 551.201 and 551.202 of title 5, CFR, require an employing agency to designate an
employee FLSA exempt only when the agency correctly determines that the employee meets one
or more of the exemption criteria.  In all exemption determinations, the agency must observe the
following principles:  (a) Each employee is presumed to be FLSA nonexempt.  (b) Exemption
criteria must be narrowly construed to apply only to those employees who are clearly within the
terms and spirit of the exemption.  (c) The burden of proof rests with the agency that asserts the
exemption.  (d) If there is a reasonable doubt as to whether an employee meets the criteria for
exemption, the employee should be designated FLSA nonexempt.  (e) The designation of a
position's FLSA status ultimately rests on the duties actually performed by the employee.

Because the claim period when the claimant occupied the criminal investigator positions covers
1987 to 1993, we must apply the FLSA regulations of 5 CFR part 551 (1984) in effect during the
period of the claim.  However, in response to a court decision, OPM amended these regulations
in 1988 by eliminating the presumption that employees in positions classified at GS-11 and
above were exempt from the overtime pay provisions of the FLSA, and changed the criteria for
determining whether a Federal employee was an executive under the FLSA.  *See* 53 *Federal*

OPM Decision Number F-1811-12-27                                                                 4

*Register* 1739-01 (January 22, 1988). The claimant believes his position should have been designated as nonexempt from the overtime pay provisions of the FLSA and thus not covered by the executive, administrative, or professional exemptions as detailed in 5 CFR 551.204, 5 CFR 551.205, and 5 CFR 551.206 of those regulations.

In its letter of December 8, 2017, the agency does not provide an FLSA exemption determination for the claimant's criminal investigator positions. The agency was also unable to provide organizational charts, mission and function statements, or copies of the position descriptions (PD) to which the claimant was officially assigned during the claim period. At our request, the claimant forwarded PD number 801 for his GS-1811-7 position. His Standard Form 50s documenting his employment history show he was assigned to PD number 801, effective December 20, 1987.

Based on careful review of the record and the claimant's assigned duties and responsibilities, we conclude his position did not meet the executive or professional exemption criteria, and the claimant does not disagree. However, we have evaluated his criminal investigator work against the administrative exemption criteria in effect during the time of the claim.

Administrative Exemption Criteria

The regulation under 5 CFR 551.205 describes the administrative exemption criteria as follows:

> An administrative employee is an advisor, assistant, or representative of management, or a specialist in a management or general business function or supporting service who meets all of the following criteria:
>
> (a) The employee's primary duty consists of work that: (1) significantly affects the formulation or execution of management policies or programs; or (2) involves general management or business functions or supporting services of substantial importance to the organization serviced; or (3) involves substantial participation in the executive or administrative functions of a management official.
>
> (b) The employee performs office or other predominantly non-manual work which is: (1) intellectual and varied in nature; or (2) of a specialized or technical nature that requires considerable special training, experience, and knowledge.
>
> (c) The employee must frequently exercise discretion and independent judgment, under only general supervision, in performing the normal day-to-day work.

Although no longer in effect, the definitions of terms used in the FLSA exemption criteria as contained in the Attachment to *Federal Personnel Manual* (FPM) Letter 551-7, dated July 1, 1975, provide useful guidance in applying the administrative exemption criteria in 5 CFR 551.205 discussed above. The meaning of terms relevant to the criteria follows.

> (a) Primary duty. As a general rule, the primary duty is that which constitutes the major part (over 50%) of the employee's work.

(b) Formulation or execution of management policies or programs. Management policies and programs range from broad national goals that are expressed in statutes or Executive Orders to specific objectives of a small field office. Employees may actually make policy decisions or participate indirectly, through developing proposals that are acted on by others. Employees who significantly affect the execution of management policies or programs typically are those whose work involves obtaining compliance with such policies by other individuals or organizations, within or outside of the Federal Government, or making significant determinations in furtherance of the operation of programs and accomplishment of program objectives. Administrative employees engaged in formulation or execution of management policies or programs typically perform one or more phases of program management (i.e., planning, developing, promoting, coordinating, controlling, or evaluating operating programs of the employing organization or of other organizations subject to regulation or other controls). Some of these employees are classified in occupations that reflect these functions (e.g., program analyst) but many are classified in subject matter occupations.

(c) General management, business, or supporting services. This element brings into the administrative category a wide variety of specialists who provide general management, business, or other supporting services as distinguished from production functions. Administrative employees in this category provide support to line managers by: (1) providing expert advice in specialized subject matter fields, such as that provided by management consultants or systems analysts; (2) assuming facets of the overall management function, such as safety management, personnel management, or budgeting and financial management; (3) representing management in such business functions as negotiating and administering contracts, determining acceptability of goods or services, or authorizing payments; or (4) providing supporting services, such as automated data processing, communications, or procurement and distribution of supplies. To warrant exemption, each employee's work must involve substantial discretion on matters of enough importance that the employee's actions and decisions have a noticeable impact on the effectiveness of the organization advised, represented, or serviced.

(d) Participation in the functions of a management official. This element includes those employees (variously identified as secretaries, administrative or executive assistants, aids, etc.) who participate in portions of the managerial or administrative functions of a supervisor whose scope of responsibility precludes personally attending to all aspects of the work. To support exemption, such assistants must be delegated and exercise substantial authority to act for the supervisor in the absence of specific instructions or procedures. Typically these employees do not have technical knowledge of the substantive work under the supervisor's jurisdiction. Their primary knowledge is of administrative procedures, organizational relationships, and the policies, plans, interests and views of the supervisor.

(e) Work of an intellectual nature. Work requiring general intellectual abilities, such as perceptiveness, analytical reasoning, perspective, and judgment applied to a variety of subject matter fields, or work involving mental processes which involve substantial

judgment based on considering, selecting, adapting, and applying principles to numerous variables. The employee cannot rely on standardized application of established procedures or precedents, but must recognize and evaluate the effect of a continual variety of conditions or requirements in selecting, adapting, or innovating techniques and procedures, interpreting findings, and selecting and recommending the "best" alternative from among a broad range of possible actions.

(f) Work of a specialized or technical nature. Work which requires substantial specialized knowledge of a complex subject matter and of the principles, techniques, practices, and procedures associated with that subject matter field. This knowledge characteristically is acquired through considerable on-the-job training and experience in the specialized subject matter field, as distinguished from professional knowledge characteristically acquired through specialized academic education.

(g) Discretion and independent judgment. The exercise of discretion and independent judgment involves: (1) comparing and evaluating possible courses of conduct, and (2) interpreting results or implications, and independently taking action or making a decision after considering the various possibilities. However, firm commitments or final decisions are not necessary to support exemption. The "decisions" made as a result of the exercise of independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decisions are subject to review, and that on occasion the decisions are revised or reversed after review, does not mean that the employee is not exercising discretion and independent judgment of the level required for exemption.

The FPM letter lists three elements involved in the evaluation of discretion and independent judgment: (1) The work must involve sufficient variables as to regularly require discretion and judgment in determining the approaches and techniques to be used, and in evaluating results. This precludes exempting employees who perform work primarily requiring skill and applying standardized techniques or knowledge of established procedures, precedents, or other guidelines which specifically govern the employee's action. (2) The employee must have authority to make such considerations during the course of assignment. This precludes exempting trainees who are in a line of work which requires discretion but who have not been given authority to decide discretionary matters independently. (3) The decisions made independently must be significant. Although this term is not so restrictive as to include only the kinds of decisions made by employees who formulate policies or exercise broad commitment authority, it does not extend to the kinds of decisions that affect only the procedural details of the employee's own work, or to such matters as deciding whether a situation does or does not conform to clearly applicable criteria.

The claimant's investigative work did not meet paragraph (a) of the administrative exemption criteria. His primary duty was not to serve as an advisor, assistant, or representative of agency management; or as a specialist in a management or general business function or supporting service. As a criminal investigator assigned to the RIO, he spent all his time conducting investigations within his assigned geographic area of suspected violations involving SSA programs including fraud against the Government, bribery, improper and false claims, forged and counterfeit checks, misuse of funds, etc. According to the claimant, he

was assigned to investigate up to 50 cases at a time, each requiring approximately three months to two years to adjudicate. His supervisor recollects the claimant completed approximately 10 to 15 investigations each month.

The claimant did not meet the requirements of (a)(1) of the administrative exemption criteria. We found the claimant's primary duties did not significantly affect the formulation or execution of management policies or programs. The claimant carried out individual investigations rather than major assignments associated with conducting the operations of the organization. As a RIO employee performing investigative work at the Sub-Office level, he did not make policy decisions or participate indirectly through developing proposals that were acted on by others. Rather than affecting the organization's operations to a substantial degree, the claimant's work products tracked an individual investigation to determine whether a crime or misconduct had occurred. His cases were assigned by his supervisor or through leads (e.g., from the general public making allegations, or counterparts from the Federal Bureau of Investigation, Secret Service, Immigration and Naturalization Service, Internal Revenue Service, Postal Service, or other Federal, State, and local law enforcement agencies). He conducted investigations by verifying a crime or misconduct occurred, identifying the criminal statute pertaining to the allegations, identifying individuals involved, performing record checks, conducting interviews, and gathering sufficient evidence to support conclusions. His case files supporting legal actions were forwarded to the U.S. Attorney for prosecution of the facts meeting a criminal offense. The purpose of the claimant's investigative work was to secure convictions of individuals who committed SSA program-related violations leading to the collection of fines, savings, and restitutions; his work did not involve making significant determinations in furtherance of the operation of programs and accomplishment of program objectives. In addition, unlike administrative employees, he did not perform any phases of program management such as planning, controlling, or evaluating operating programs.

The claimant did not meet the requirements of (a)(2) of the administrative exemption criteria. His primary duties did not involve general management or business functions or supporting services of substantial importance to the organizations serviced. Although he performed a staff support function by providing factual investigative information to assist U.S. Attorneys in prosecuting individuals committing violations involving SSA programs, the claimant did not perform a support function of substantial importance to the organization serviced as expected by (a)(2). He independently investigated allegations and submitted investigative reports at the conclusion of a case. When needed, he consulted his supervisor if outside assistance or resources beyond the RIO were required. The claimant completed financial, healthcare, employment, and other record checks, in addition to conducting interviews with perpetrators and witnesses. He developed and expanded investigations, comparing and evaluating possible courses of action and necessary investigative techniques to efficiently utilize resources to prove the elements of a crime had been committed. For example, the claimant went undercover as a patient when conducting an investigation of a podiatrist's billing practices under Medicare. He interpreted results gathered from investigative leads (e.g., from informants, witnesses, and record searches) and made decisions on subsequent investigative steps after considering the various possibilities. If appropriate, he would refer case files containing interview notes, affidavits, and other evidence to the U.S. Attorney for prosecution. The claimant (as well as all criminal investigators at the RIO) was also

responsible for identifying patterns of fraud to determine if, e.g., the crime was committed as a result of loosely or poorly worded program rules. The criminal investigator drafted a paper explaining how the fraud was committed along with any program-related recommendations, which was then forwarded to the supervisor (the Assistant Regional Inspector General) and the OIG at DHHS headquarters. The decision to adopt recommendations regarding program improvements was made by or through the Deputy Inspector General at DHHS headquarters. We conclude the claimant's investigative responsibilities were not viewed as an extension of the management process, and the impact of his work was limited to that which he personally performed relating to the subject individual investigation, rather than helping to manage or affecting the management of significant matters within the claimant's agency. Furthermore, he was not involved in systems analysis and general management support functions, e.g., safety and personnel management, budgeting, and financial management. The claimant did not represent agency management in negotiating and administering contracts for goods or services, and did not provide support services, e.g., automated data processing, communications, procurement, and distribution of supplies.

The claimant did not meet the requirements of (a)(3) of the administrative exemption criteria. His assignments did not involve substantial participation in the executive or administrative functions of a management official. He did not act as a secretary or administrative assistant participating in portions of the managerial or administrative functions of a supervisor, with no requirement for technical knowledge of the substantive work under the supervisor's jurisdiction. Unlike such employees, the claimant independently performed the OIG work in a field office requiring technical knowledge of substantive law enforcement and investigative work relating to violations of laws.

The claimant did not meet the administrative exemption because he did not meet paragraph (a) of the criteria. Although we conclude the claimant's position met paragraphs (b) and (c) of the exemption criteria, it failed to meet all of the required exemption criteria in (a), (b), and (c). Therefore, we conclude the claimant's work performed as a GS-12 criminal investigator did not meet the administrative exemption, and that the criminal investigator work he performed at the lower GS-7/9/11 grade levels would also fail to meet the administrative exemption.

**Decision**

The claimant's work was nonexempt (i.e., covered by the overtime pay provisions of the FLSA), and he is entitled to compensation for all overtime hours worked at the FLSA overtime rate for the period of the claim he was improperly designated as FLSA exempt; i.e., from June 21, 1987, to February 20, 1993, less his active duty military service time. [2] Since his FLSA settlement was

---

[2] The claimant's Certificate of Release or Discharge from Active Duty, DD Form 214, included with his claim shows he was in an active duty status from March 4, 1991, to May 25, 1991. However, the employment history provided by B & L and Standard Form (SF) 50s provided by the agency shows he was on leave without pay for active military duty effective March 24, 1991, and returned to duty on May 19, 1991. Because the DD Form 214 is the official military record for the period of his active duty, for purposes of this claim we must assume that document is accurate and accept it as the definitive record of his military duty during the claim period.

OPM Decision Number F-1811-12-27                                                    9

for a time period subsequent to February 20, 1993, it is not germane to the overtime pay calculations for the period of the claim covered by this decision. The agency must follow the compliance requirements on page ii of this decision.

The claimant must submit evidence showing the amount and extent of overtime that was performed as provided for in 5 CFR 551.706(a) as informed by the agency's copies of SF 50s documenting receipt of premium pay which were submitted to OPM and the claimant. The agency will have the opportunity to review this evidence using any sources of information available, including witnesses, before a determination is made as to whether the claimant is entitled to any back pay under the FLSA and any interest as required under 5 CFR part 550, subpart H.[3] Any petition for attorney's fees and expenses must be submitted to the agency out of which this claim arose. Should the claimant be determined to be entitled to back pay which the claimant believes to be incorrectly computed, the claimant may file a new FLSA claim with this office.

---

Furthermore, since the military active duty time recorded by the DD Form 214 covers the entire period documented by the claimant's SF 50s and excluded from the claim period, it has no impact on the claimant's FLSA overtime pay entitlement.

[3] The agency's overtime and interest calculations must account for the claimant's prior receipt of administratively uncontrollable overtime during the claim period, reported by the agency in its AAR as "premium pay," using the principles contained within 29 U.S.C. 207(k), 5 CFR 551.501(a)(1) and (5), and 5 CFR 551.541(a). OPM's Fact Sheet on the topic can be found here: https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/guidance-on-applying-flsa-overtime-provisions-to-law-enforcement-employees-receiving-administratively-uncontrollable-overtime-pay/.

OPM Decision Number F-1811-12-27                                          10

## Distribution

Mr. Jules Bernstein and Ms. Linda Lipsett
Law Offices
Bernstein & Lipsett, P.C.
1130 Connecticut Avenue, NW
Suite 950
Washington, DC  20036-1798
lipsett@aol.com
chouse@bernstein-lipsett.com

Mr. John A. Pollock
67 Chamberlain Street
Lake Orion, MI  48362
john67@comcast.net

Ms. Tracy B. Lynge
Acting Executive Officer
Social Security Administration
Office of the Inspector General
tracy.lynge@ssa.gov

Mr. Keith L. Ewancio
Lead Human Resources Specialist
Office of the Inspector General
Social Security Administration
Keith.L.Ewancio@ssa.gov